UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BOARD OF TRUSTEES OF THE LABORERS
PENSION FUND OF LOCAL UNION NO. 186;
BOARD OF TRUSTEES OF THE LABORERS'
WELFARE FUND OF LOCAL 186; BOARD OF
TRUSTEES OF THE LABORERS' LOCAL NO.
322 ANNUITY FUND; BOARD OF TRUSTEES
OF THE LABORERS' LOCAL NO. 322
TRAINING AND EDUCATION FUND; and
LABORERS' INTERNATIONAL UNION OF
NORTH AMERICA, LOCAL UNION NO. 1822,

1:18-CV-00583
(MAD/DJS)

                  Plaintiffs,

vs.

CASALE CONSTRUCTION SERVICES, INC.,

                  Defendant.

---

APPEARANCES:

SLEVIN, HART LAW FIRM
1625 Massachusetts Avenue, Northwest
Suite 450
Washington, D.C. 20036
Attorneys for Plaintiffs

OF COUNSEL:

RICHARD SCOTT SIEGEL, ESQ.
KRISTINA SALAMOUN, ESQ.

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On May 16, 2018, Plaintiffs Board of Trustees of the Laborers Pension Fund of Local

Union No. 186 (the "Pension Fund"), Board of Trustees of the Laborers' Welfare Fund of Local

186 (the "Welfare Fund"), Board of Trustees of the Laborers' Local No. 322 Annuity Fund (the

"Annuity Fund"), Board of Trustees of the Laborers' Local No. 322 Training and Education Fund

(the "Training Fund") (collectively, the "Funds"), and the Laborers' International Union of North

America, Local Union No. 1822 ("Local 1822") commenced this action against Defendant Casale Construction Services, Inc. alleging violations of Sections 502(g)(2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(g)(2) and 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See* Dkt. No. 1. Presently before the Court is Plaintiffs' Motion for Default Judgment as to Casale Construction Services, Inc. *See* Dkt. No. 9. For the following reasons, the motion is granted in part.

## II. BACKGROUND

### A. Facts

Defendant is a New York construction company that employed employees represented by Plaintiff Local 1822, a labor organization within the meaning of LMRA § 2(5), 29 U.S.C. § 152(5). *See* Dkt. No. 1 at 3, 4. The Funds are multiemployer employee benefit plans that are maintained by their respective Agreements and Declarations of Trust (collectively, the "Trust Agreements") and joint labor-management funds established pursuant to LMRA § 302(c), 29 U.S.C. § 189(c). *See* Dkt. No. 1 at 2.

According to the Complaint, Defendant is bound by collective bargaining agreements (the "CBAs"), the Trust Agreements, and the Local 187 Funds' Delinquent Contribution and Payroll Audit Policy and Procedure and the Local 322 Funds' Collections Policy (the "Delinquency Policies"). *See id.* at 4, 5. The agreements require Defendant to submit monthly remittance reports and fringe benefit contributions to the Funds on behalf of Defendant's covered employees for all hours worked or paid. *See id.* at 4.

On or about July 11, 2017, Plaintiffs completed an audit of Defendant's payroll records, which allegedly revealed that Defendant owed a total of $146,516.68 to the Funds and Local

2

1822. *See id.* at 4-5. Plaintiffs claim that Defendant is liable under ERISA §§ 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145, the CBAs, the Trust Documents, the Delinquency Policies, and LMRA § 301, 29 U.S.C. § 185, for unpaid contributions, interest, the greater of interest on the delinquent contributions or liquidated damages equal to twenty percent of the delinquent contributions owed, audit fees, and attorneys' fees and costs. *See id.* at 5-6.

**B.     Procedural History**

Plaintiffs filed a Complaint against Defendant on May 16, 2018. *See* Dkt. No. 1. On May 25, 2018, Defendant was served with copies of the Summons and Complaint through service on Amy Lesch, an authorized agent of the New York Secretary of State. *See* Dkt. No. 6 at 1. Plaintiffs filed an Affidavit of Service on June 15, 2018. *See* Dkt. No. 6. Defendant has not filed an answer to the Complaint, which was due on June 15, 2018.

On June 18, 2018 Plaintiffs filed a Request for Clerk's Certificate of Entry of Default, and on June 20, 2018 the Clerk noted an Entry of Default against Defendant. *See* Dkt. No. 7, 8. On July 20, 2018, Plaintiffs filed a Motion for Default Judgment. *See* Dkt. No. 9. The Notice of Plaintiffs' Motion for Default Judgment was served on Defendant via first-class mail on July 20, 2018. *See id.* That motion is presently before the Court.

### III. DISCUSSION

**A.     Default**

"Generally, 'Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant.'" *United States v. Simmons*, No. 10-CV-1272, 2012 WL 685498, *2 (N.D.N.Y. Mar. 2, 2012) (quoting *Robertson v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008)). "'First, under Rule 55(a), when a party fails "to plead or otherwise defend . . . the clerk must enter the party's

3

default.'"" *Id.*; *see also* Fed. R. Civ. P. 55(a). "'Second, pursuant to Rule 55(b)(2), the party seeking default is required to present its application for entry of judgment to the court.'" *Simmons*, 2012 WL 685498, at *2. "'Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment.'" *Id.*; *see also* Fed. R. Civ. P. 55(b)(2). "When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

In the present matter, the Summons and Complaint were properly served on Defendant on May 25, 2018, and the Clerk of the Court entered a Default on June 20, 2018. *See* Dkt. Nos. 6, 8. Because Defendant has failed to appear in this action, it is deemed to have admitted all well-pleaded, relevant, factual allegations for the purposes of establishing liability. *See Bravado Int'l*, 655 F. Supp. 2d at 188; *see also United States v. Beam*, No. 12-CV-0087, 2012 WL 1802316, *2 (N.D.N.Y. May 17, 2012) ("By failing to answer plaintiff's complaint or oppose this motion, defendant has effectively conceded that [it] is bound by the terms of the [agreement it] entered into with plaintiff . . .").

Under ERISA, an employer that is required to make contributions to a multiemployer benefit plan "must make such contributions in accordance with the terms and conditions of such plan or [collectively bargained] agreement." 29 U.S.C. § 1145. Here, Defendant is bound by the CBAs and Trust Agreements, which require Defendant to submit monthly remittance reports and pay fringe benefit contributions to the Funds on behalf of Defendant's covered employees for all hours worked or paid. *See* Dkt. No. 1 at 4. Defendant failed to make the required contributions and is therefore liable to Plaintiffs for those unpaid contributions. *See id.* at 4-5.

4

### B. Damages

Plaintiffs request $209,970.94 in damages against Defendant, which includes delinquent contributions, union dues, interest, liquidated damages, attorneys' fees and costs, and audit fees and costs. *See* Dkt. No. 1-1 at § VI; Dkt. No. 9-1 at 6-7. ERISA provides for statutory damages as follows:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of —
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate

29 U.S.C. § 1132(g)(2).

"While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Int'l*, 655 F. Supp. 2d at 189-90 (citation omitted). "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "The burden is on the plaintiff to establish its entitlement to recovery."

*Bravado Int'l*, 655 F. Supp. 2d at 189 (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158). "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" *Id.* at 190 (citation omitted).

Here, Plaintiffs have not met their burden of proving that they are entitled to the recovery they seek. As such, the request for damages is denied until Plaintiffs provide the Court with documentation supporting their damages claims.

### *1. Contributions*

Plaintiffs allege that the July 11, 2017 audit shows that Defendant owes $146,516.68 to Plaintiffs in unpaid contributions. *See* Dkt. No. 9-1 at 6. The Court has no idea how Plaintiffs calculated the amount of unpaid contributions owed. In support of their motion, Plaintiffs submit a five-page Audit Report covering the period of April 29, 2015 to June 7, 2017, and instruct the Court to focus only on unpaid contribution fees from June 2016 to July 2017. *See* Dkt. No. 9-8; Dkt. No. 9-2 at ¶ 15. The Audit Report contains spreadsheets with unlabeled columns and rows, and Plaintiffs offer no explanation as to how the data supports the amount that Plaintiffs are requesting in damages. *See* Dkt. No. 9-8. Plaintiffs have not provided the Court with adequate basis to establish their entitlement to recovery, and the Court will not blindly "rubber-stamp" Plaintiffs' damages calculations. *See Bravado Int'l*, 655 F. Supp. 2d at 189; *Overcash*, 549 F. Supp. 2d at 196. As such, Plaintiffs' request for $146,516.68 in unpaid contributions is denied.

### *2. Interest and Liquidated Damages*

Plaintiffs request $22,638.15 in interest and $25,958.40 in liquidated damages. *See* Dkt. No. 9-1 at 6. Since the Court is unable to determine the amount of unpaid contributions, the amount of interest and liquidated damages also cannot be calculated. Thus, the Court denies Plaintiffs' request for interest and liquidated damages at this time.

### 3. Audit Fees

"Requests for audit fees are 'generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'" *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (quoting *King v. Unique Rigging Corp.*, No. 01-CV-3797, 2006 WL 3335011, *5 (E.D.N.Y. Oct. 27, 2006)). Accordingly, a party requesting audit fees must provide sufficient information to allow a court to determine the reasonableness of the fees requested. Several courts in this circuit have denied audit fees in ERISA actions where the plaintiffs have failed to provide detailed records of the work that was performed by auditors. *See Oneidaview Pile Driving*, 2017 WL 1483446 at *4 (denying audit fees where the plaintiffs provided an invoice from their auditor stating the number of hours worked without specifying what work was performed); *Eng'rs Joint Welfare Fund v. C. Destro Dev. Co., Inc.*, 178 F. Supp. 3d 27, 36 (N.D.N.Y. 2016) (same); *Dahill Moving & Storage Co.*, 545 F. Supp. 2d at 269 (same).

Plaintiffs state that they spent $3,520.00 in conducting their audit of Defendant, but they do not provide any documentation to support this. *See* Dkt. No. 9-1 at 4, 5; Dkt. No. 9-2 at ¶ 13. Without specifics about the type of work that was performed, the Court cannot determine whether the audit fees that Plaintiffs request are reasonable. As such, Plaintiffs' request for audit fees is denied.

### 4. Attorneys' Fees and Costs

In an ERISA action involving delinquent contributions, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "[A] district court must begin its § 1132(g)(1) analysis by determining whether a party has achieved 'some degree of success on the merits,' but it is not required to award fees simply

7

because this pre-condition has been met." *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110 (2d Cir. 2011) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 500 U.S. 242, 254 (2010)).

Plaintiffs request $11,337.52 in attorneys' fees and costs through July 19, 2018. *See* Dkt. No. 9-1 at 6; Dkt. No. 9-2 at ¶ 18-21. The Court is unable to determine if such an award is appropriate at this time, and will decide the issue of attorneys' fees and costs after it has reviewed the supplemental submissions requested below.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiffs' Motion for Default Judgment against Casale Construction Services, Inc. is **GRANTED** as to liability and **DENIED** without prejudice as to damages; and the Court further

**ORDERS** that Plaintiffs shall file supplemental submissions within **TWENTY (20) DAYS** of the date of this Memorandum-Decision and Order providing a basis for the unpaid contribution calculations and audit fees; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 11, 2018
 Albany, New York

Mae A. D'Agostino
U.S. District Judge